IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRIAN LEROY CARBAUGH,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| vs. | * | **Civil Action No. ADC-17-2181** |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| **ADMINISTRATION,**[1] | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On August 2, 2017, Brian Leroy Carbaugh ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint, the parties' cross-motions for summary judgment (ECF Nos. 20 & 23) and Plaintiff's reply (ECF No. 26), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 20) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 23) is GRANTED, and the decision of the SSA is AFFIRMED.

### PROCEDURAL HISTORY

On April 12, 2012, Plaintiff filed a Title II application for DIB and on May 30, 2012, Plaintiff filed a separate Title XVI application for SSI, which both alleged disability beginning on October 1, 2010. His claims were denied initially and upon reconsideration. Subsequently,

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner of Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

on November 14, 2013, Plaintiff filed a written request for a hearing and, on May 1, 2014, an Administrative Law Judge ("ALJ") presided over a hearing. On May 30, 2014, the ALJ rendered a decision ruling that Plaintiff was not disabled under the Social Security Act (the "Act"). Plaintiff requested review by the Appeals Council, which granted the request on October 23, 2015 and remanded Plaintiff's claim for a new hearing. In its remand order, the Appeals Council directed the ALJ to consider the opinion of Plaintiff's treating source psychiatrist, Dr. Larry Edelstein, obtain further vocational expert testimony, and give further consideration to Plaintiff's maximum residual functional capacity ("RFC"), especially considering Dr. Edelstein's opinions. ECF No. 15 at 14.

On April 8, 2016, Plaintiff appeared and testified at the second hearing before a different ALJ. ECF No. 15 at 14. On July 13, 2016, the ALJ issued a decision ruling that Plaintiff "ha[d] not been under a disability, as defined in the [Act], from October 1, 2010, through the date of this decision." ECF No. 15 at 26. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on June 14, 2017, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On August 2, 2017, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of his disability applications. On January 30, 2018, Plaintiff filed a Motion for Summary Judgment, and on May 2, 2018, after receiving an extension of time for filing, Defendant filed a Motion for Summary Judgment. Plaintiff filed a response on May 29, 2018.[2] This matter is now fully briefed and the Court has reviewed both parties' motions.

---

[2] On May 31, 2018, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a

3

claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB and SSI, a claimant must establish that he is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

4

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's RFC, which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

5

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p, 1996 WL 374186, at *1–9 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations. *Id.*, at *5.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the

6

claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2010. ECF No. 15 at 16. At step two, the ALJ found that Plaintiff had the severe impairments of aortic aneurysm repair, diverticulitis, headaches, anxiety, major depressive disorder, generalized anxiety disorder, and panic disorder. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 17. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] is limited to sitting and walking for six hours per day; no more than occasional decision making; no more than occasional changes in the work setting; and no more than occasional interactions with the public and co-workers.

*Id.* at 19. The ALJ then determined that Plaintiff was unable to perform any past relevant work. *Id.* at 25. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* Thus, the ALJ concluded that Plaintiff "ha[d] not

7

been under a disability, as defined in the [Act], from October 1, 2010, through the date of this decision." *Id.* at 26.

## DISCUSSION

Plaintiff raises three allegations of error on appeal: the ALJ (1) improperly considered Plaintiff's affective and anxiety disorders under Listings 12.04 and 12.06; (2) failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace in the RFC determination; and (3) improperly weighed the opinions of Drs. Edelstein and Sangwoon Han. Each of Plaintiff's arguments lack merit and are addressed below.

## A. The ALJ's Consideration of Listings 12.04 and 12.06 Was Based On Substantial Evidence.

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Where a claimant can show that his condition "meets or equals the listed impairments," the claimant is entitled to a conclusive presumption that he is disabled within the meaning of the Act. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *see McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, "if met, are conclusive on the issue of disability" (citation omitted)). The burden of proof is on the claimant to show that he meets *all* of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D.Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or

8

equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id.*

Here, Plaintiff argues that the ALJ improperly determined that his impairments did not meet or medically equal Listing 12.04 for Affective Disorders and Listing 12.06 for Anxiety Disorders. ECF No. 20-1 at 9. Plaintiff opines that the ALJ improperly based his decisions on "a one-sided, myopic, and selective view of the complete record and not an evaluation of all evidence." *Id.* at 11. Specifically, Plaintiff points to the ALJ's failure to cite any medical evidence and his reliance on "the meager facts that [Plaintiff] did not abandon his children (as did their mother), that [Plaintiff] actually tries (yet fails) to play Monopoly with his sons, that he goes to their 4H activities and brings them shopping (because they know what to buy)," which collectively does not constitute substantial evidence. *Id.* at 10–11 (emphasis in original). Defendant argues that "Plaintiff's arguments amount to no more than a rehashing of the evidence in this case, which is outside the purview of this Court." ECF No. 23-1 at 12. The Court agrees with Defendant.

Mental disorders under Listings 12.04 and 12.06 must satisfy the requirements of the medical criteria that must be present in the medical evidence as well as either impairment-related functional criteria ("paragraph B") or the criteria used to evaluate "serious and persistent mental disorders" ("paragraph C"). 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00. Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs a "special technique" to rate a claimant's degree of limitation in each area, based on the extent to

which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three functional areas: none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4). To satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.06. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id.* § 12.00(C).

Here, the ALJ provided substantial evidence to support his conclusion that Plaintiff's mental impairment did not meet or medically equal the criteria set forth in Listings 12.04 and 12.06. After discounting Plaintiff's treating providers' findings for "lack of support or conclusions based on [Plaintiff]'s subjective allegations,"[3] the ALJ found that Plaintiff had moderate restriction in daily living activities; moderate difficulties in social functioning and concentration, persistence, or pace; and no episodes of decompensation. ECF No. 15 at 17–18. Thus, the ALJ concluded that Plaintiff did not meet the paragraph B criteria.[4] *Id.* at 18. In doing so, the ALJ cited to and discussed the evidence of record, including Plaintiff's own statements regarding his daily activities and symptoms. *Id.* at 17–18. Notably, the ALJ observed that Plaintiff has custody of his teenage twin sons and raises them while also, "[a]t some point, . . .

---

[3] An analysis of this determination by the ALJ is discussed *infra* at C and the Court finds no error with the ALJ's decision to discount the findings of these treating physicians.

[4] The ALJ also discussed the paragraph C criteria and determined that Plaintiff failed to establish the paragraph C criteria. ECF No. 15 at 18. Plaintiff does not challenge that finding here.

caring for his ailing parents," has engaged in some social activities revolving around his son's 4-H club, dating, and going to a bar with his brothers, buys groceries with his sons' help, and pays bills. *Id.* (record citations omitted). Later, in his RFC assessment, the ALJ also discussed Plaintiff's daily life, stating that Plaintiff "allege[d] ongoing problems with anxiety, anger, and situational stress, at the Frederick County Mental Health Services since January 2012, but progress notes document appropriate affect, cooperative behavior, normal speech, logical and goal-directed thought processes, intact memory, and good insight and judgment and Global Assessment of Function (GAF) has repeatedly been rated above 60." *Id.* at 21 (record citation omitted). Furthermore, the ALJ stated that Plaintiff's anxiety "has been stable for several years and has always been, at most, an impairment causing moderate functional limitations." *Id.* at 24–25. Thus, the ALJ's reasoning discusses substantial evidence to support his conclusion. *See McNair v. Comm'r, Soc. Sec.*, No. GLR-17-2124, 2018 WL 3239487, at \*3 (D.Md. July 2, 2018) (determining that the ALJ provided substantial evidence that the claimant did not meet or medically equal the criteria set forth in Listing 12.04 where he discussed how the claimant "cooks dinner for his family, can dress and bathe himself, drives places, and shops for groceries," "watches 3-4 hours of television daily and reads books," regularly attends church, and "talks with others and attends social gatherings" (record citations omitted)).

Moreover, while Plaintiff posits that the ALJ erred by failing to explain contrary evidence, he does not point to any evidence which the ALJ omitted from his discussion. ECF No. 20-1 at 13. Instead, Plaintiff's argument seems to concern the ALJ's weighing of the evidence, but this Court "may not reweigh th[e] evidence, and [the Court] must defer to the ALJ's determination when, as here, conflicting evidence might lead reasonable minds to disagree whether [Plaintiff] was disabled." *Sharp v. Colvin*, 660 F.App'x 251, 258 (4th Cir. 2016). Thus,

in light of the ALJ's extensive discussion of and citation to the evidence of record, the ALJ provided substantial evidence to support his conclusion that Plaintiff's mental impairments did not meet or medically equal Listings 12.04 and 12.06.

## B. The ALJ's RFC Determination Properly Accounted For Plaintiff's Moderate Difficulties With Concentration, Persistence, And Pace.

At step three of the sequential evaluation, the ALJ determined that "[w]ith regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties," and further explained as follows:

> At a March 2014 appointment, [Plaintiff] noted that he liked to play Monopoly with his sons but sometimes became frustrated because he could not finish the game. He also reported that his sons helped him when buying groceries because they were able to remember what items were needed. He is able to pay household bills; [Plaintiff] pays his electric bill at the grocery store. Overall, [Plaintiff] is stable on medications and able to maintain a routine in which he cares for himself and his family.

ECF No. 15 at 18 (internal record citations omitted). The ALJ then limited Plaintiff's RFC, in pertinent part, to "no more than occasional decision making; no more than occasional changes in the work setting; and no more than occasional interactions with the public and co-workers." *Id.* at 19. Plaintiff contends that the ALJ's RFC assessment failed to adequately account for his moderate limitations in concentration, persistence, or pace in violation of *Mascio*. ECF No. 20-1 at 15. Additionally, Plaintiff argues that the ALJ failed to consider whether he could work a full day and sustain employment. *Id.* at 16. The Court disagrees.

In *Mascio*, the Fourth Circuit recognized a difference between the ability to perform simple tasks and the ability to stay on task. The latter ability concerns the broad functional area of concentration, persistence, or pace. *Mascio*, 780 F.3d at 638. Unlike in *Mascio*, the ALJ's RFC assessment in this case included the limitations of no more than occasional decision

making, no more than occasional changes in the work setting, and no more than occasional interactions with the public and coworkers. ECF No. 15 at 19. This Court has acknowledged that a limitation related to a claimant's ability to stay on task, such as a limitation to work with few changes, adequately accounts for a claimant's moderate limitations in concentration, persistence, and pace. *See, e.g., Lathan v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-444, 2016 WL 1056562, at *3 (D.Md. Mar. 16, 2016) (finding no error where the ALJ restricted the claimant's RFC to non-production work which "should not include productions [sic] standards, judgment changes, and/or *frequent general changes to the routine work environment*" (emphasis added)); *Chase v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-2961, 2016 WL 199410, at *1, *3 (D.Md. Jan. 15, 2016) (finding no error where the ALJ restricted the claimant's RFC to "simple, routine, and repetitive tasks, in a 'low stress' job (defined as requiring no more than occasional decision making and *no more than occasional changes in the work setting*) . . . ; with no interaction with the general public; and with no more than occasional interaction with co-workers" (emphasis added)); *Rayman v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-3102, 2015 WL 6870053 at *3 (D.Md. Nov. 6, 2015) (finding no error where the RFC limited claimant to "a low stress environment, such that there are *few changes in the work setting* and no fast-paced or quota production standards" (emphasis added)). Moreover, this Court has held that a limitation to "occasional decision-making" accounts for a claimant's moderate difficulties in concentration, persistence, and pace. *See Green v. Berryhill*, No. TMD 15-3467, 2017 WL 1048155, at *8 (D.Md. Mar. 20, 2017) (determining that "the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC and in the hypothetical questions to the VE to low-stress work, defined as "occasional decision-making" and "no fast paced production," accounts for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace" (internal record citation omitted)).

Here, contrary to Plaintiff's assertions, the ALJ's finding specifically, and appropriately, addressed Plaintiff's ability to stay on task by restricting Plaintiff to work with "no more than occasional decision making; no more than occasional changes in the work setting; and no more than occasional interactions with the public and co-workers." ECF No. 15 at 19. Furthermore, the ALJ adequately discussed his reasoning for his description of the work that Plaintiff is able to do on a regular and continuing basis, *id.* at 19–25, and Plaintiff fails to point to any evidence to support his assertion that he would be off task or otherwise absent from work, making him unable to work a full day. Thus, the ALJ's RFC assessment adequately accounted for Plaintiff's moderate limitation in concentration, persistence, and pace.

## C. The ALJ Properly Weighed The Testimony Of Plaintiff's Treating Psychiatrists In Making His Decision.

Plaintiff contends that the ALJ improperly considered the opinions of his two treating psychiatrists, Drs. Edelstein and Han, by not giving their opinions controlling weight. ECF No. 20-1 at 17–18. Regarding both treating psychiatrists' opinions, Plaintiff argues that the ALJ should not have discounted their opinions based on Plaintiff's subjective allegations because "[t]he major component of the field of psychiatry is the analysis of subjective patient complaints[.]" *Id.* at 18. In so doing, Plaintiff opines that "the ALJ substituted his own lay opinion for those of the expert[s] in the field of psychiatry." *Id.*

A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when it is well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *see Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927 (c)(2)) (stating that where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial

14

evidence, it should be afforded significantly less weight). Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. In other words, "a treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See* 20 C.F.R. § 416.927(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id.* § 416.927(c)(4); *see also Dunn v. Colvin*, 607 F.App'x 264, 268 (4th Cir. 2015). If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, including the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)–(6). The Commissioner must also consider, and is entitled to rely on, opinions from non-treating doctors. *See* SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Here, the ALJ provided substantial evidence to support his assignment of "little weight"

to Drs. Edelstein's and Han's opinions. The ALJ summarized Dr. Han's opinions and explained

his reasoning for affording those opinions little weight as follows:

> [Plaintiff's therapist's] notes are consistent with those from Dr.
> Han for [March 2014], in which [Plaintiff] reported that he was
> stressed about his family home but had not had a panic attack for
> more than a month. [Plaintiff] noted that he was watching what he
> said, and becoming a more responsible, caring person. Dr. Han
> assessed [Plaintiff]'s GAF at 57. He also increased [Plaintiff]'s
> Zoloft dosage to 50 milligrams. Notes from early April 2014
> indicate that [Plaintiff] was able to manage most self-care
> strategies and note that he was caring [for] his teenage twin sons.
> Just a few weeks later, on April 29th, [Plaintiff] presented as calm
> and indicated that he was experiencing fewer panic attacks. This
> appointment was held shortly before [Plaintiff]'s previous
> disability hearing and [Plaintiff] reported to [his therapist] that he
> would try to return to work in the family business if he did not
> receive a favorable outcome. About a week earlier, on April 22nd,
> Dr. Han noted that [Plaintiff] appeared psychiatrically and
> behaviorally stable, even during ongoing challenges. His GAF
> was 58.
>
> At a May 2014 appointment, [Plaintiff] was very stressed about
> being denied a possible disability payment and reported high
> anxiety and difficulty sleeping. Similarly, on May 30th, Dr. Han
> noted that [Plaintiff] was stable, although situationally upset. In
> June 2014, [Plaintiff] was upset about the denial of his application
> for benefits but reported no other significant mental health
> symptoms. He also reported that he was continuing with light
> exercise and attempting to eat a healthy diet. [Plaintiff]'s mental
> status remained steady through these 2014 appointments with both
> [his therapist] and Dr. Han. In July, Dr. Han ranked [Plaintiff]'s
> GAF at 59. In November 2014, most of [Plaintiff]'s complaints
> were about physical pain, as he had recently been in the hospital
> for an obstructed bowel.
>
> In February 2015, Dr. Han noted that [Plaintiff] was pleasant and
> overall behaviorally stable. [Plaintiff] had a two-month gap in
> treatment, but returned to therapy with [his therapist] in March
> 2015. [Plaintiff] was anxious and sad about losing his home but
> also indicated that he had met a woman with whom he might want
> to pursue a relationship. [Plaintiff] again had a lapse in service
> with [his therapist] following this appointment. In April 2015,

[Plaintiff] told Dr. Han that he was not currently depressed but worried about recurrent depression. [Plaintiff] returned to therapy with [his therapist] in May 2015 and asked her to fill out a (disability) Form 500. He did not see [his therapist] again until September. At that appointment, he appeared fearful about returning to work. He appeared disheveled at this 2015 therapy appointments [sic] through the end of the year, but progress toward his treatment goals was also noted. By October 2015, Dr. Han's note[s] describe [Plaintiff]'s depression as "in remission." He continued to taper down [Plaintiff]'s Ativan, a medication used to control anxiety.

. . . .

In addition to the above opinion evidence, the undersigned notes that Exhibit 23F is opinion evidence that was previously overlooked and, since the last hearing, a new piece of opinion evidence has been submitted, Exhibit 31F. Both of these assessments [were] completed by treating provider, Dr. Han. In Exhibit 23F, completed April 17, 2014, Dr. Han opined that [Plaintiff] has no useful ability to maintain regular attendance and be punctual within customary tolerances, maintain attention for a two-hour segment, sustain an ordinary routine without special supervision, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, deal with normal work stress, or complete a normal workday/workweek without interruptions from psychologically-based symptoms. He also indicated that [Plaintiff] is unable to meet competitive standards as they apply to ability to remember work-like procedures, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in a routine work setting, carry out detailed instructions, set realistic goals and make plans independently of others, deal with the stress of skilled or semi-skilled work, interact appropriately, use transportation, and adhere to basic standards of neatness and cleanliness. Dr. Han also opined that [Plaintiff] can be expected to be absent from work more than four days a month due to the impact of impairments and treatment. Dr. Han also noted moderate limitation in activities of daily life, which is consistent with the medical evidence on file. However, he also noted extreme limitation in maintaining social functioning, which is inconsistent with [Plaintiff]'s lifestyle, which includes socializing with friends and family, dating, and participating in his

sons' social activities, such as 4-H club. The record also does not support the marked concentration limit, nor one or two episodes of decompensation. [Plaintiff] maintains some level of ability to concentrate, as he runs a household. There is no evidence whatsoever of decompensation noted in the file. Further, in addition to lack of support in the evidence, this assessment is internally inconsistent, as Dr. Han awarded [Plaintiff] a GAF score of 50 to 57, with the highest score in the past year at 50 to 60. These scores are consistent with moderate limitations. As such, little weight can be given to this assessment.

In the more recent assessment from February 18, 2016, Dr. Han actually notes fewer restrictions, with marked limitations in concentration only. He initially supplied a GAF score but scratched it out. This assessment is given partial weight, as mild daily activity limitations and moderate social limitations are more consistent with the record, but the marked concentration and one or two episodes of decompensation cannot be supported. Additionally, much of these findings appear to be based on [Plaintiff]'s subjective reporting of his symptoms and abilities rather than Dr. Han's actual treating notes and clinical observations.

ECF No. 15 at 21–23 (internal record citations omitted). The ALJ also summarized the opinions

of Dr. Edelstein and explained his reasoning for affording little weight to Dr. Edelstein's

opinions as follows:

> *Per the Remand Order, the undersigned has also considered the findings of Dr. Edelstein in Exhibit 16F/1-6.* In this assessment, Dr. Edelstein notes diagnoses of major depressive disorder, panic disorder, generalized anxiety disorder, and grief reaction. He awards a GAF of 50. Dr. Edelstein goes on to note marked or [sic] limitations in all functional areas and notes that [Plaintiff] has no useful ability to function in almost all listed areas of ability and aptitude. This exam was signed on April 11, 2013. These findings are simply not supported anywhere in the record. The treating GAFs of record are all significantly above 50. For the majority of the record, [Plaintiff] is described as stable. Further, his daily activities show a much higher degree of capability. He cares for his teenage sons as a single parent. He socializes with friends and family. He dates. He consistently pays bills and attends medical appointments. These activities, supported by reports of stability in the treating notes, simply do not support the level of extreme limitation noted by Dr. Edelstein in Exhibit 16F.

18

ECF No. 15 at 22 (emphasis in original).

First, the ALJ properly considered that the treating psychiatrists' opinions were generally consistent with other evidence in the record from the consultative medical examiner, which the ALJ gave partial weight. *Id.* at 21–24. The ALJ also properly determined that Drs. Edelstein's and Han's opinions contained some inconsistencies from Plaintiff's other treatment records and Plaintiff's own testimony, which the ALJ found to not be wholly credible. *Id.* at 20–23; *see Vick v. Comm'r, Soc. Sec. Admin.*, No. GJH-17-156, 2017 WL 6040036, at *2 (D.Md. Dec. 5, 2017) (considering how the physicians' opinions repeat the claimant's subjective complaints in determining that the ALJ provided substantial weight to support his assignment of "little" or "modest" weight to the treating psychiatrists' opinions); *Bailey v. Berryhill*, No. ADC-16-3181, 2017 WL 2735552, at *7 (D.Md. June 23, 2017) (same); *Rapczynski v. Colvin*, No. WGC-15-2637, 2016 WL 4537765, at *10 (D.Md. Aug. 31, 2016) (determining that a medical opinion had little value where "it d[id] not rely on objective clinical signs uncovered during examinations of the claimant, but on subjective reports of the claimant (citation omitted)). Furthermore, some of Dr. Han's own assessments contradicted and the ALJ gave more weight to Dr. Han's later February 18, 2016 assessment. ECF No. 15 at 23; *see Barrow v. Astrue*, No. BPG-11-3393, 2013 WL 1431666 (D.Md. Apr. 8, 2013) (considering a treating psychiatrist's contradicting assertion about a claimant's lack of limitations when determining the weight to give the psychiatrist's later opinion about the claimant's psychiatric symptoms). These considerations constituted good reason for the ALJ to give little weight to Drs. Edelstein's and Han's opinions. *See Phillips v. Comm'r, Soc. Sec. Admin.*, No. ADC-15-3504, 2018 WL 2717838, at *2 (D.Md. June 5, 2018) (finding that an ALJ had further demonstrated that a treating psychiatrist's opinion was inconsistent with the other record evidence where the ALJ thoroughly considered other

medical opinions, to which the ALJ gave more weight). Therefore, the Court finds that the ALJ's reasoning for giving the opinions of Plaintiff's two treating psychiatrists little weight was fully articulated in the ALJ's written decision and supported by good reasons and substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d). Accordingly, the ALJ did not err in affording little weight to Plaintiff's treating psychiatrists' opinions.

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence to support the finding that Plaintiff was "not disabled" within the meaning of the Act from October 1, 2010 through the date of the ALJ's decision. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 20) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 23) is GRANTED, and the decision of the SSA is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 31 July 2018

A. David Copperthite
United States Magistrate Judge